**Harold AGELOFF and Carol M. Ageloff, as Personal Representatives of the Estate of Scott Alan Ageloff, Deceased, Plaintiffs–Appellees,**

v.

**DELTA AIRLINES, INC., Defendant–Appellant.**

No. 86–6022.

United States Court of Appeals, Eleventh Circuit.

Feb. 17, 1989.

Barwick & Dillian, P.A., Lyndall M. Lambert, Howard E. Barwick, Thomas E. Ice, Miami Shores, Fla., for defendant-appellant.

Robert M. Montgomery, Jr., Montgomery Searcy and Denney, P.A., Edna L. Caruso, West Palm Beach, Fla., for plaintiffs-appellees.

Before VANCE and ANDERSON,
Circuit Judges, and BROWN *, Senior
Circuit Judge.

## CERTIFICATION TO THE SUPREME COURT OF FLORIDA AND THE HONORABLE JUSTICES THEREOF.

BROWN, Senior Circuit Judge:

It appears to the United States Court of Appeals for the Eleventh Circuit that the above-styled case in this Court involves questions or propositions of law of the State of Florida that may be determinative of the cause, and there appear to be no clear, controlling precedents in the decisions of the Supreme Court of Florida. The United States Court of Appeals for the Eleventh Circuit therefore certifies the following questions of law of the State of Florida to the Supreme Court of Florida for instructions concerning such questions of law, based on the facts recited herein.

## I. *Joint Statement of Facts* [1]

Scott Ageloff was a passenger who died in the crash of Delta Air Lines (hereinafter "Delta") Flight 191 at the Dallas–Ft. Worth Regional Airport on August 2, 1985. At the time of his death, the Decedent was twenty-nine years old and was employed by the Ageloff family-owned toy business, Harry's Kidsworld, Inc., (hereinafter "Kidsworld") in which he owned a 25% share.

In January of 1986, Ageloff's parents, in their capacities as Personal Representatives of his estate, brought a wrongful death action against Delta Air Lines in the United States District Court for the Southern District of Florida. Subject matter jurisdiction was invoked based on the diversity of citizenship of the parties, pursuant to 28 U.S.C. § 1332. The parties stipulated that Delta would not contest liability for compensatory damages and that the Estate would waive all other claims for damages, including any claim for punitive damages. The case proceeded to a jury trial solely on the issue of damages under the Florida Wrongful Death Act, *Fla.Stat.* §§ 768.16–768.27. Since Ageloff was unmarried and had no dependents, the sole issue for the jury to determine was the loss of prospective net accumulations to his estate reduced to present money value.

Prior to trial, Delta filed a Motion in Limine objecting to testimony of the Plaintiffs' experts regarding any investment return on Ageloff's future savings. The Defendant's position was that the investment yield on future savings was not a proper component of net accumulations as defined in *Fla.Stat.* § 768.18(5). That provision defines "net accumulations" as that portion of the Decedent's expected net business and salary income that probably would have been retained as savings and left as part of his estate if he had lived his normal life expectancy. "Net business and salary income" is further defined as "the part of

* Honorable John R. Brown, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. As requested, counsel have afforded an agreed statement of facts. As there were minor unresolved differences as to the questions to be certified, the Court has modified them slightly in form.

the Decedent's probable gross income after taxes, excluding income from investments continuing beyond death, that remains after deducting the Decedent's personal expenses and support of survivors, excluding contributions in kind." Plaintiffs claimed that investment yield on future savings does not constitute "income from investments continuing beyond death" and was, therefore, a proper element of net accumulations, as defined in § 768.18(5). After hearing argument at trial, the District Court denied Delta's Motion in Limine.

At trial, the Plaintiffs presented expert testimony of Dr. Irving Goffman, an economist, and Dr. Jonathan Cunitz, a financial consultant, regarding the value of the Estate's net accumulations. Dr. Goffman began by postulating that in fiscal 1985 the amount of remuneration Ageloff earned, as opposed to the amount he actually received, had been $40,000. He utilized an annual growth rate for Ageloff's earnings of 10%, which consisted of an inflation rate of 6.5% and a real growth rate of 3.5%. Dr. Goffman then assumed that Ageloff would save 25% of his gross earnings and reinvest it back into the family business, Kidsworld. Based on his analysis of the company's earnings, Dr. Goffman assumed that these reinvested savings would yield an annual return of 12.5%. Based upon these assumptions, Dr. Goffman testified that the prospective net accumulations of Ageloff's estate, unreduced to present value, were $38,730,300. Utilizing a discount rate of 7%, Dr. Goffman reduced the net accumulations to a present value of $1,974,190.

The Plaintiffs' second expert witness, Dr. Cunitz, performed his calculations in substantially the same manner. Dr. Cunitz estimated Ageloff's annual earnings from Kidsworld at the time of his death at $41,250. He used an annual growth rate for Ageloff's earnings of 11.5%, consisting of an inflation rate of 6.5% and a real growth rate of 5%. Dr. Cunitz then assumed a savings rate beginning at 10% for 1986 and increasing gradually each year thereafter to 25% in the year 2016, after which it would remain constant. Like Dr. Goffman, Dr. Cunitz also predicted that Ageloff would have reinvested the saved portion of his income into Kidsworld. He estimated, however, that the annual return on these reinvested savings would be 18%. From these assumptions, Dr. Cunitz calculated that Ageloff's prospective net accumulations unreduced to present value were $55,540,850. He reduced that figure to present value by use of a 7% discount rate for a result of $2,829,688.

Delta's expert, Dr. Hartley Mellish, an economist, based his calculation of Ageloff's net accumulations on Ageloff's actual remuneration received from Kidsworld during the period from 1981 to 1985, i.e., Ageloff's income shown on his federal income tax returns. Dr. Mellish annualized the income figure for the incomplete calendar year of 1985, then accounted for inflation by adjusting all figures to 1986 dollars. Finally, he averaged those adjusted figures to yield an estimated 1986 income of $29,688. He then took into account probable future increases in income in real terms in order to avoid predicting the future rate of inflation. Dr. Mellish predicted that Ageloff's "net accumulation rate" (rather than savings rate) would have been 25% of his gross income over the remainder of his life expectancy. According to Dr. Mellish, that 25% figure included both a savings rate and an increase in the value of assets in which those savings were placed. Dr. Mellish assumed that the Decedent would not reinvest his savings in Kidsworld, because, according to Dr. Mellish's calculations, such an investment would yield a negative rate of return.

Dr. Mellish then assumed that, for the period between the Decedent's death and his retirement at age 65, the difference between the real growth rate and the real discount factor would average 1%. Dr. Mellish calculated the prospective net accumulations of Ageloff's Estate, reduced to present value, as $305,026. Dr. Mellish predicted that Ageloff's cost-of-living consumption between age 65 and the completion of his life expectancy nine years later, would have diminished the present value of the prospective net accumulations to $279,878 by the time of his death.

The jury returned a verdict in favor of the Plaintiffs for $1,000,000. The Defend-

ant's Motion for New Trial was denied. Thereafter, Delta filed a timely Notice of Appeal in this Court.

## II. *Questions to be Certified to the Florida Supreme Court* [2]

1. Does the definition of Net Accumulations under *Fla.Stat.* § 768.18(5) of the Florida Wrongful Death Act:

   (a) include investment income?

   (b) exclude the investment return on future savings of a Decedent as constituting "income from investments continuing beyond death?"

2. Under the Florida Wrongful Death Act, should determination of the future inflationary effects on prospective net accumulations be calculated upon the (i) below-market-discount method, (ii) the case-by-case method, (iii) the total offset method?

The entire record in this case, together with copies of the briefs of the parties and agreed certification and memoranda in this court, are transmitted herewith.

---

**2.** As pointed out in *Ageloff v. Delta Airlines,* 860 F.2d 379, 389 n. 37 (11th Cir.1988) "by the phrasing of the questions we disclaim any purpose to restrict the Supreme Court of Florida to the specific words used. That court is free to restate the questions to assure sufficient answers to the real question perceived by that court."